UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| RONNIE GEE, | ) |
| Plaintiff, | ) |
| v. | ) Case No.: 2:20-cv-00056-JHE |
| JAMAL A. BOUYER, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**[1]

Plaintiff Ronnie Gee ("Gee") brings this action against Defendant Jamal A. Bouyer ("Bouyer"), an Alabama State Trooper, asserting three constitutionally-based claims. (Doc. 1). Specifically, Gee alleges Bouyer violated of his First, Fourth, and Fourteenth Amendment rights during on an illegal traffic stop and a subsequent arrest. (*See id.* 1 at 2-4). Defendant Bouyer moves for summary judgment as to all claims. (Doc. 19). Gee opposes the motion for summary judgment (doc. 24), and Bouyer has filed a reply brief in support of his motion. (Doc. 27). The motion is fully briefed and ripe for review. Because there are disputed issues of material fact, Bouyer's motion for summary judgment (doc. 19) is **DENIED**.

**I. Standard of Review**

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 13).

1

to judgment as a matter of law." Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish there is a "genuine issue for trial." *Id.* at 324. (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual disputes will be resolved in Plaintiff's favor when sufficient competent evidence supports Plaintiff's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276-78 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of the events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mtn. Park, Ltd. v. Oliver*, 836 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be

enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II. Summary Judgment Facts

On August 24, 2019, Alabama State Trooper Bouyer stopped Gee for speeding (speed in excess of 25 MPH over the speed limit) and reckless driving (manner in which Gee passed vehicles on the interstate) and issued two corresponding citations. (Doc. 1 at ¶¶3-4, doc. 19-2 at 15, 31 (52:8-17, 115:22-16)). Gee accepted the tickets and proceeded toward his job. (Doc. 1 at ¶5). Gee and Bouyer were both polite during the encounter. (Doc. 19-1 at 12 (39:15-17)). From their brief conversation during the stop, Bouyer knew Gee was on his way to work. (Doc. 1 at ¶6, doc. 19-1 at (65:4-10), doc. 19-2 at 29 (109:3-6)). Bouyer concluded the stop and released Gee on a recognizance bond. (Doc. 1 at ¶7).

This is where the parties' stories diverge. According to Bouyer, Gee accelerated at a high speed as he left the scene. (Doc. 19-2 at 17 (61:2-8)). Bouyer returned to his vehicle and could not locate Gee's vehicle ahead of him. (*Id.* (61:9-13)). Bouyer testified he had to accelerate his vehicle well-over the speed limit to gain sight of Gee's vehicle. (*Id.* at 18 (62:5-7)). Bouyer further testified he observed Gee commit the offenses of speeding and improper lane change without proper signal. (*Id.* (65:11-15)). Bouyer, pacing behind Gee, observed Gee travelling at a speed of approximately 80 MPH, similar to the way he drove prior to the initial stop. (*Id.* at 18, 31 (62:21-22, 116:7-117:5)). Bouyer decided to stop Gee before activating his blue lights. (*Id.* at 31 (12-14)). Bouyer simultaneously initiated another traffic stop (activating his blue lights) as Gee raised his hand out of the vehicle window and extended his middle finger in Bouyer's general direction. (Doc. 1 at ¶7; doc. 19-2 at 18 (65:4-10)). Bouyer effected a second traffic stop and arrested Gee.

3

Gee disputes he committed any new traffic violations after the initial stop. (Doc. 25-1 at ¶¶3-6).[2] Gee declares that he "did not . . . after just receiving [two] tickets from Trooper Bouyer, then blatantly violate the traffic laws in front of that same trooper and then, for good measure, shoot him a bird." (*Id.* at ¶3). Specifically, Gee states he "did not rapidly speed off after the first stop[;] did not drive in excess of the speed limit[; and] did not drive recklessly, switching between lanes without using my turn signal." (*Id.* at ¶¶4-6). Gee does admit "shoot[ing] Trooper Bouyer a bird." (*Id.* at ¶7).

The body camera footage does not show whether Gee committed any new traffic offenses.[3] However, the footage shows Bouyer stopping Gee's vehicle for the second time. (Video ~T13:59:00). Bouyer exits his vehicle with his handcuffs and immediately directs Gee to shut off and step out of his vehicle. (*Id.*). While some of the exchange between Gee and Bouyer is inaudible, Gee can be heard asking Bouyer why he is handcuffing him, to which Bouyer replies "you're going to jail for your reckless driving." (*Id.*). Some of what Bouyer says next is inaudible, but he can be heard saying he "passed by you merging . . . you stick your middle finger up out the window. . . ." (*Id.*). Gee explains that this is the way he goes to work. (*Id.*). After Bouyer secures

---

[2] To the extent Bouyer takes issue with Gee's declaration (*see* doc. 27 at 1-2), it is not disqualifying for a declaration to be "self-serving." *See Reddick v. Republic Parking Sys.*, No. 2:17-cv-00728-KOB, 2019 WL 1326088, *1 (N.D. Ala. Mar. 25, 2019) ("A non-moving party's self-serving declarations can create genuine issues of fact."). Any issues Bouyer has with the timing or contents of the declaration pertain to issues of credibility, which are for the trier of fact. *See id.* ("And even if the court doubts the veracity of a self-serving declaration, the court cannot make credibility determinations at the summary judgment stage.").

[3] As more thoroughly explained herein, the body camera footage does not "blatantly contradict" Gee's version of events as Bouyer suggests in his brief. (*See* doc. 27 at 5).

4

Gee in handcuffs, he is placed in the back of his patrol car. (*Id.*). According to Bouyer's brief, Gee was not formally charged with speeding or improper usage, but Gee posted bond and was released. (Doc. 19 at 1).

### III. Analysis

#### A. Fourth Amendment Claims

The Fourth Amendment[4] to the Constitution of the United States protects against "unreasonable searches and seizures." As a general proposition, there are three categories of interactions between law enforcement officers and citizens that may implicate the Fourth Amendment. In the first category, police officers merely approach and question a willing citizen in a public place, without any coercion or detention. The Fourth Amendment is not applicable to this category of interactions. *United States v. Thompson*, 712 F.2d 1356, 1359 (11th Cir.1983). The second category involves investigatory stops of citizens by law enforcement officers, in which an otherwise unconstitutional seizure of this citizen is justified by an objective, reasonable suspicion of unlawful activity based on articulable and specific facts known to the officer when the seizure occurs. *Id.; Terry v. State of Ohio*, 392 U.S. 1 (1968). The third category of police-citizen encounter, such as an arrest, must be supported by probable cause. *Brown v. Illinois*, 422 U.S. 590 (1975); *Dunaway v. New York*, 442 U.S. 200 (1979).

This case is about the second traffic stop, which resulted in Gee's arrest. Once a person has made bond, or in this case been released on his own recognizance, that person can only be held

---

[4] The Fourth Amendment has been applied to the states through the Fourteenth Amendment. *See Mapp v. Ohio*, 367 U.S. 643 (1961).

or arrested again if there is probable cause he committed another offense. *See Alcocer v. Mills*, 906 F.3d 944, 953-54 (11th Cir. 2018). Thus, Bouyer must have had a reasonable suspicion of new, unlawful activity to initiate the second stop, and, for Gee's arrest to be justified, Bouyer must have had probable cause that Gee committed a new offense after the first stop. Bouyer argues he is entitled to qualified immunity from Gee's claims.

**1. Qualified Immunity – Arguable Probable Cause**

Qualified immunity protects government officials performing discretionary functions in their individual capacity from civil suit and liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hill v. Cundiff*, 797 F.3d 948, 978 (11th Cir. 2015) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "When a court concludes the defendant was engaged in a discretionary function, 'the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity.'" *Id.* at 978 (citation omitted). There exists no dispute that Bouyer was performing a discretionary function in these circumstances, so Gee bears the burden of persuasion on the balance of the qualified immunity inquiry: to show Bouyer violated a constitutional right and that the right was clearly established at the time of the alleged violation. *Id.* (citation omitted).

An arrest without probable cause constitutes an unreasonable seizure that violates the Fourth Amendment. *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010). Conversely, an arrest supported by probable cause constitutes an absolute bar to a Fourth Amendment claim for false arrest. *See Gurrera v. Palm Beach Cnty. Sheriff's Office*, 657 F. App'x 886, 889 (11th Cir. 2016) (citing *Marx v. Gumbinner*, 905 F.2d 1503, 1505 (11th Cir. 1990)); *Case v. Eslinger*, 555 F.3d 1317, 1326-27 (11th Cir. 2009). Therefore, to preclude qualified immunity on a false arrest

claim, a plaintiff must "show a lack of probable cause" for the arrest. *Gurrera*, 657 F. App'x at 889 (citation omitted).

Law enforcement officers may effect warrantless arrests "where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (citations omitted). "Probable cause exists when 'the facts and circumstances within the officers' knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed . . . an offense.'" *Miller v. Harget*, 458 F.3d 1251, 1259 (11th Cir. 2006) (citing *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998)). For probable cause to exist, "an arrest [must] be objectively reasonable under the totality of the circumstances," *Bailey v. Board of Cnty. Comm'rs of Alachua Cnty., Fla.*, 956 F.2d 1112, 1119 (11th Cir. 1992), and an officer's subjective intentions play no role in determining the existence of probable cause. *See Rankin*, 133 F.3d at 1433-34.

The "substance of all the definitions of probable cause is a reasonable ground for belief of guilt . . . particularized with respect to the person to be searched or seized." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (citations omitted); *see also United States v. $242,484.00*, 389 F.3d 1149, 1160 (11th Cir. 2004) ("Probable cause in this context is a 'reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion—the same standard used to determine the legality of arrests, searches, and seizures in criminal law.'") (citations omitted). "All we have required is the kind of 'fair probability' on which 'reasonable and prudent people, not legal technicians, act.'" *Florida v. Harris*, 568 U.S. 237, 243 (2013) (citations and internal alterations omitted). Although "not a high bar," probable cause "requires . . . a probability or substantial chance of criminal activity, not an actual showing of such activity." *District of*

7

*Columbia v. Wesby*, ⸺ U.S. ⸺, 138 S. Ct. 577, 586 (2018).

In the context of qualified immunity determinations, assessing probable cause commands a relaxed assessment. To obtain qualified immunity on a Fourth Amendment unlawful seizure claim, an officer need only sustain "arguable" probable cause, not actual probable cause. *Brown*, 608 F.3d at 735. Arguable probable cause exists where "reasonable officers in the same circumstances and possessing the same knowledge as [a defendant] could have believed that probable cause existed to arrest [a § 1983 complainant]." *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004) (quotation marks omitted). "Indeed, it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and in such cases those officials should not be held personally liable." *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990) (quotation marks and ellipses omitted).

### 2. Application

There is a factual dispute as to whether Bouyer had arguable probable cause to arrest Gee. Gee offers evidence to dispute that he committed any new offense after the initial stop. As an initial matter, expressive use of the middle finger, even if directed toward an officer, is protected speech under the First Amendment for which a person cannot be lawfully arrested. *See e.g., Wilson v. Martin*, 549 F. Appx. 309, 311 (6th Cir. 2013). Furthermore, Gee specifically states he did not rapidly speed off after the initial stop, then drive in excess of the speed limit, or drive recklessly, switching between lanes without using his turn signal. (Doc. 25 at ¶¶3-5).

Alabama Code § 32-5A-190 (1975) provides the elements of reckless driving as follows:

> (a) Any person who drives any vehicle carelessly and heedlessly in a willful or wanton disregard for the rights or safety of persons or property, or without due caution or circumspection and at a speed or in a manner so as to endanger or be

8

likely to endanger any person or property, shall be guilty of reckless driving. Bouyer argues that, based on this definition of reckless driving, he could have reasonably believed Gee was in violation of the statute even if Gee was driving the posted speed limit and using his turn signal when changing lanes, i.e., that there are other ways to drive recklessly. (Doc. 27 at 2-3). Although it may be conceivable for a person to commit the offense of reckless driving without speeding or failing to use a turn signal, that is not consistent with Bouyer's argument. Bouyer contends Gee was speeding. (Doc. 19-2 at 18, 31 (62:21-22, 116:7-117:5)). Gee says he was not speeding. (Doc. 25-1 at ¶¶3-6). Furthermore, Gee says he did not commit any new traffic violations after the initial stop; Bouyer says he did. Such a factual dispute is inappropriate for resolution at summary judgment. *See Webb v. Ethridge*, 849 F.2d 546, 549-50 (11th Cir. 1988) (stating that in the context of an unlawful arrest case where the plaintiff and officers submit conflicting affidavits as to the facts surrounding the arrest, the court must credit the plaintiff's version as truthful when the officers move for summary judgment on qualified immunity grounds). The parties agree that, after the initial stop, Gee reentered the road. Bouyer returned to his vehicle and could not locate Gee's vehicle ahead of him. (Doc. 19-2 at 17 (61:9-13)). Bouyer then had to reenter the road and catch up with Gee to pull him over again. Gee's version of events that he was not speeding or driving recklessly after the initial stop is certainly plausible, given the fact that Bouyer was able to catch up with him after Gee left the initial stop first and was out of sight before Bouyer returned to the road.

Bouyer wants the court to discern from the body cam footage that the initial exchange between he and Gee shows that Bouyer witnessed some reckless driving *after* he issued the initial citations and arrested Gee because of that behavior. (*See* doc. 27 at 3-4). Having reviewed the

body cam footage, it is not as clear as Bouyer suggests. Although Bouyer references Gee's "reckless driving" as the reason he is being arrested, he does not describe when that reckless driving occurred. Bouyer also almost immediately then references Gee's middle finger gesture, which supports Gee's assertion that Bouyer took offense to the gesture and that was a(n) (unlawful) basis for his arrest.

Alternatively, Bouyer argues the arrest was valid because he could have arrested Gee for disorderly conduct pursuant to Alabama Code § 13A-11-7(a)(3), and "[t]he validity of an arrest does not turn on the offense announced by the officer at the time of the arrest." (Doc. 27 at 4) (citing *Longino v. Henry Cty., Ga.*, 791 F. App'x 828, 832-33 (11th Cir. 2919) (quoting *Bailey v. Bd. of City Comm'rs*, 956 F.2d 1112, 1119 n.4 (11th Cir. 1992))). Specifically, Bouyer argues Gee acknowledged there were numerous vehicles on the road when he said he could have been raising his middle finger at anyone, thus raising his middle finger in heavy traffic would be arguable probable cause for the arrest. (Doc. 27 at 4). Alabama's disorderly conduct statute provides as follows:

> (a) A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he or she does any of the following: …
>
> > (3) In a public place uses abusive or obscene language or makes an obscene gesture.

ALA. CODE § 13A-11-7 (1975).

The words "abusive or obscene language" and "obscene" gesture in this statute have been narrowly interpreted to apply only to "fighting words." *H.N.P. v. State*, 854 So. 2d 630, 632 (Ala. Crim. App. 2003). "Fighting words" are "those words which have a likelihood of causing a violent

response by the person to whom they are addressed. They are words that by their very utterance provoke a swift physical retaliation and incite an immediate breach of the peace." *Summers v. Martin*, No. CV-12-S-1816-NE, 2013 WL 6499366, *9 (N.D. Ala. Dec. 11, 2013) (quoting *Skelton v. City of Birmingham*, 342 So.2d 933, 936-37 (Ala. Crim. App. 1976)). The words used by the alleged offender "must be calculated to cause an immediate breach of the peace. It is not enough . . .they merely arouse anger or resentment." *Id.* (quoting *Swann v. City of Huntsville*, 455 So. 2d 944, 950 (Ala. Crim. App. 1984) (internal quotations omitted)).

The middle finger gesture made towards a police officer is insufficient to constitute fighting words. *H.N.P.*, 854 So. 2d at 632 (citing *Robinson v. State*, 615 So. 2d 112, 114 (Ala. Crim. App. 1992)). Likewise, this gesture alone does not constitute fighting words as required for the crime of disorderly conduct when directed to another citizen. *J.S. v. Campbell*, No. 2:05-cv-928-WKW, 2006 WL 2864254, *5 (M.D. Ala. Oct. 5, 2006). Gee sticking his hand out the car window and extending his middle finger – whether directed at Bouyer or generally at other drivers – does not constitute fighting words for the purpose of Alabama's disorderly conduct statute. There are no facts to support a conclusion that Gee made this gesture in such a way "to raise a probability of physical retaliation by the addressee or someone acting in his interest." *See Gibson v. City of Greenville*, No. 2:08CV127-SRW, 2010 WL 434717, *7 (M.D. Ala. Feb. 2, 2010) (quoting *H.N.P.*, 854 So. 2d at 632). Thus, these facts do not support arguable probable cause that Gee violated Alabama's disorderly conduct statute.

Consequently, there are disputed facts that preclude summary judgment. Construing all reasonable inferences in Gee's favor as the non-movant, a reasonable police officer in Bouyer's position would have known that he lacked arguable probable cause for stopping and arresting Gee

and that he was violating clearly established law in doing so. Accordingly, Bouyer is not entitled to qualified immunity on either of Gee's Fourth Amendment claims.

### B. First Amendment Retaliation

Gee alleges, having committed no additional traffic violations, Bouyer stopped and arrested him based on the middle finger gesture, i.e., in retaliation for Gee exercising his First Amendment free speech rights. (Doc. 1 at 3-4). To state a retaliation claim, a plaintiff must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech. *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005).

Bouyer argues the existence of arguable probable cause for the arrest precludes Gee's First Amendment retaliation claim. (Doc. 19 at 7). As discussed above, there is a question of fact as to whether there was arguable probable cause to support Gee's arrest. Therefore, Bouyer's argument does not support dismissal of this claim and summary judgment is not appropriate.

## IV. Conclusion

Because there are genuine issues of material fact, Bouyer's motion for summary judgment (doc. 19) is **DENIED**. Counsel for the parties are **ORDERED** to file a joint status report by **July 12, 2021**, informing the court whether they believe this case would benefit from mediation or if they are ready to begin pretrial proceedings.

DONE this 28th day of June, 2021.

**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGEs